UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RALPH W., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:20 CV 82 JMB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On June 12, 2019, Plaintiff Ralph W. applied for supplemental security income, Title XVI, 42 U.S.C. §§ 1381, *et* seq., and on July 3, 2019, he filed an application for disability insurance benefits, Title II, 42 U.S.C. §§ 401 *et seq*. (Tr. 201-202, 203-207). In both applications, he alleged that he became disabled on March 26, 2018, after a motor vehicle accident (Tr. 117, 327). After his applications were denied on initial consideration (Tr. 106-123), he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 134).

Plaintiff and counsel appeared for a hearing on May 1, 2020. (Tr. 63-87). Plaintiff testified about his disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert Jenifer Larue. The ALJ issued a decision denying Plaintiff's applications on June 1, 2020. (Tr. 16-28). The Appeals Council denied Plaintiff's request for

review on October 23, 2020. (Tr. 1-3). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II. Evidence Before the ALJ

### A. Disability and Function Reports and Hearing Testimony

Plaintiff was born in November 1970 and was 47 years old on the alleged onset date. (Tr. 234). He lives in a house with his wife and three children who were 12, 11, and 8 in 2020 (Tr. 68, 199). He graduated from high school but has no specialized training (Tr. 238). He worked as a heavy machine operator from 2002 to 2011, had a break in employment, and then worked in pest control on a commission basis for the first three months in 2018 (Tr. 238).[1]

Plaintiff reported his disabling conditions as ruptured discs in his back and neck, limb numbness, migraines, chronic pain, and memory loss (Tr. 237). As of June 2019, he uses Ibuprofen to treat his conditions (Tr. 230).

Plaintiff's June 2019 Function Report[2] sets forth various limitations in daily living (Tr. 225-230). Plaintiff states that he cooks frozen meals for himself, takes care of pets, does some housework, can only drive a few blocks, does not walk, gets confused paying bills, and has short term memory problems (Tr. 225-226). He only socializes with his children and wife and visits his mother twice a week (Tr. 227). As to his functional limitations, he states that he has problems with all areas of function, that he cannot lift more than fifteen pounds, that all activity hurts his back and neck, that he has headaches, that he cannot socialize with others, and that he has problems

---

[1] Medical reports indicate that he worked in pest control for a longer time period, from January to August 2018 (Tr. 356, 375).

[2] The transcript does not contain pages one and two of Plaintiff's June 1, 2019 Function Report -Adult (Tr. 225-230).

with memory and following instructions (Tr. 228). However, he can take care of his personal hygiene, and does laundry and dishes (Tr. 264-265).

Plaintiff testified at the May 2020 hearing that he does not have medical insurance (Tr. 68). On March 26, 2018, he was involved in a motor vehicle accident that injured his back and neck, and caused pain, functional limitations, and headaches/migraines (Tr. 69-71). He received cortisone shots and had neck surgery in July 2019 which relieved some functional limitations (3-4 months after surgery) and the headaches (immediately). (Tr. 71). However, he still has pain in his neck that radiates to his forearm and lower back pain that shoots past his buttocks in addition to numbness and tingling (Tr. 70, 75). Any type of movement causes pain and he currently takes over-the-counter medication, and sits and lies down to relieve the pain (Tr. 70). He also has limited mobility: he must get up and walk around after sitting for 30 minutes; he can only stand for 15 to 30 minutes; he has to take a break after walking half a block; he can lift less than 15 pounds; he has limited grip strength; has trouble reaching in front and above his head; and, he cannot grab things (Tr. 72-75) He has trouble sleeping, concentrating, and remembering things (Tr. 76). He has bad days about once a week where he "just can't function much at all" (Tr. 77). Since his accident, he has lost 35 pounds due to his injuries (Tr. 69).

Vocational expert Jenifer Larue testified that Plaintiff's past work as a heavy machine operator is classified as medium exertional level and skilled and that his past work as an exterminator is classified as light exertional level and skilled (Tr. 82). Ms. Larue was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age, education, and work experience with the following limitations: lifting and carrying twenty pounds occasionally, ten pounds frequently; thirty minutes of standing or walking at one time, but cumulatively could be six hours of an eight-hour workday; sitting thirty minutes at one time for a total of six hours during an eight-hour workday; occasional climbing, stooping, kneeling,

crouching, and crawling; reaching and handling frequently; and capable of simple, routine tasks throughout a workday (Tr. 83).  Ms. Larue testified that such a person would not be able to do Plaintiff's past relevant work but that other unskilled, light occupations were available including electrical assembler, mail clerk, and merchandise marker (Tr. 83-84).

Ms. Larue further testified that if the individual was limited by 50% of the hypothetical in reaching with both arms, handling, and fingering and could only turn his head occasionally, he would not be able to perform the aforementioned work (Tr. 84-85).  In addition, workplaces would only tolerate two 15-minute breaks and one 30-minute lunch break in a regular workday (Tr. 85).

      B.      **Medical and Opinion Evidence**

Two days after the accident on March 26, 2018, Plaintiff went to the emergency room with complaints of headache, worsening left neck, shoulder, back, and hip pain, and a foggy mind (Tr. 327).  Upon examination, he had pain on the left side of his body, nausea, and headache in addition to moderate pain upon movement, back pain, and chest tenderness (Tr. 330).  His physical examination was otherwise normal (Tr. 331).  He was diagnosed with neck muscle, fascia, and tendon strain and discharged with no new medication (at the time he was taking Cyclobenzaprine (muscle relaxer) and Tramadol (pain medication)) and directions to follow up with his physician as needed (Tr. 331).

He started with conservative treatment:  he underwent physical therapy in July and August 2018 (Tr. 390); he received two steroid injections in his lumbar spine on July 19 and September 27, 2018 and two steroid injections in his cervical spine on July 25 and August 30, 2018 (Tr. 333-336).  An x-ray of the lumbar spine on October 18, 2018 was largely unremarkable (Tr. 339).

Ten months after his accident, on January 7, 2019, Plaintiff began seeing Dr. Matthew F. Gornet for spinal issues (Tr. 356).  Plaintiff complained of neck pain with headaches that extended to his shoulders and upper arms (Tr. 356).  He was found to have pain and some decreased range

of motion (Tr. 357). Dr. Gornet reviewed various radiographs and tests and found annular tears/disc injuries in his lumbar and cervical spine (Tr. 357-358). Dr. Gornet recommended prioritizing his neck pain and suggested that Plaintiff reduce smoking, stop working, obtain a CT of his cervical spine and follow up in 6 weeks for further treatment (Tr. 358). At the follow up on February 28, 2019, Dr. Gornet ordered additional CT and MRI's and had a plan for surgical intervention (Tr. 354). At the next appointment on June 15, 2029, Dr. Gornet noted that Plaintiff's lumbar spine was symptomatic but that testing revealed annular tears in his cervical spine which was the focus (Tr. 353). Dr. Gornet explained to Plaintiff that the structural injuries can cause further damage and Plaintiff elected to have surgery to resolve these problems (Tr. 353). Thus, over a year after his accident, on July 31, 2019, Plaintiff underwent disc replacement surgery to alleviate his neck pain (Tr. 343-350). In a two-week follow-up appointment it is noted that: "He is already dramatically improved. His headaches are improved. He is very pleased. Exam shows 5/5 strength in all groups. His wound is clean" (Tr. 351). He was found to be doing well clinically, but remained temporarily totally disabled, and was directed to follow up in four weeks (Tr. 352). A follow-up visit on February 27, 2020 reveals that he "continues to do well with his neck" but that he continues to have low back pain (Tr. 415). He was directed to complete additional diagnostic tests and follow up in 6 months (Tr. 416). From January 7, 2019 to February 26, 2020, Dr. Gornet indicated that Plaintiff was unable to work (Tr. 359-362, 419-420). He was released to light work with a 25-pound limit on February 27, 2020 (Tr. 416, 420). There is no indication in the record that Plaintiff is scheduled for any additional surgery.

Consultive examiner Linda Schultz, a licensed psychologist, conducted a psychological examination of Plaintiff on September 28, 2019 (Tr. 375-379). She found that he had a mood disorder due to his medical condition. However, she also found that he is able to understand and follow simple instructions; socialize appropriately; he denied concentration and focus issues; has

issues with persistence and maintaining pace; can manage himself with accommodations; and, can manage his own funds (Tr. 376-377).

Consultative examiner Dr. Andrew Van Bruggen conducted physical examination on September 28, 2019 (Tr. 380-386). Dr. Van Bruggen found that Plaintiff's mood was normal, that he had clear thought process, and that this memory was normal and concentration was good (Tr. 382). He had a steady gate, no palpable muscle spasms, he could pick up and grasp objects, could stand and walk normally (Tr. 382-383). However, he had tenderness on palpation of the cervical and lumbar spine, had difficulty squatting and rising, needed assistance rising from a sitting position, getting on and off the examination table, and hop on one foot (Tr. 383). He also had reduced range of motion in the cervical and lumbar spine but normal muscle strength (Tr. 383).

### III.  Standard of Review and Legal Framework

To be eligible for disability benefits, a plaintiff must prove that he is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th

Cir. 2009). Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite his limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue,

964 F.3d 959, 965 (8th Cir. 2010) (same).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider).  Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### IV.  The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above.  (Tr. 16-28).  The ALJ found that Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful activity since August, 2018, after the onset date

advocated by Plaintiff (Tr. 18). At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and mood disorder (Tr. 19). The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ specifically addressed listings 1.04 (spine disorder) and 12.04 (affective disorder).

The ALJ next determined that Plaintiff had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk thirty minutes at one time but cumulatively six hours out of an eight-hour workday; sit thirty minutes at one time for a total of six hours in an eight-hour workday; occasionally climb, stoop, kneel, crouch and crawl; frequently reach and handle; and, is limited to simple routine tasks throughout the workday (Tr. 21). In assessing Plaintiff's RFC, the ALJ summarized the medical record; written reports from Plaintiff; Plaintiff's work history; and Plaintiff's testimony regarding his abilities, conditions, and activities of daily living. (Tr. 22-26).

At step four, the ALJ concluded that Plaintiff was unable to return to any past relevant work. (Tr. 26). His age on the alleged onset date placed him in the "younger individual" category but changed categories to "closely approaching advanced age" at the time of the hearing (Tr. 26). He has at least a high school education and is able to communicate in English (Tr. 26). The transferability of job skills was not an issue because using the Medical-Vocational Rules as a framework supported a finding that plaintiff was not disabled whether or not he had transferable job skills. The ALJ found at step five that someone of Plaintiff's age, education, work experience, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely as an electrical assembler, mail clerk, and merchandise marker (Tr. 27). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from March 26, 2018 through June 1, 2020 — the date of the decision. (Tr. 28).

## V. Discussion

Plaintiff argues that (1) the ALJ failed to properly evaluate his pain; (2) the RFC is not supported by substantial evidence; (3) the ALJ failed to properly consider a closed period of disability; and, (4) the hypothetical question and associated RFC did not properly account for Plaintiff's limitations as to concentration, persistence, or pace.

### A.   Pain Evaluation

When determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints.[3] Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005). In doing so, the ALJ must consider the claimant's prior work record and third-party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021); Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not mechanically obligated to discuss each of the above factors, however, when rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his or her reasons for discrediting the testimony, and the ALJ's credibility assessment must be based on substantial evidence. Grindley, 9 F.4th at 630-631; Vick v. Saul, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012). On review by the court, "[c]redibility determinations are the province of the ALJ." Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting Julin v. Colvin, 826 F.3d 1082, 1086 (8th

---

[3] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

Page **10** of **17**

Cir. 2016)).  The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." Id.

Here, the ALJ noted Plaintiff's testimony regarding pain and how it affects his life and what activities detract from Plaintiff's testimony:  Plaintiff testified that pain affects his memory but he is able to use a riding lawnmower, care for pets, make simple meals, drive, shop, use his cell phone, and handle transactions (Tr. 20); Plaintiff testified that pain makes him irritable but he is able to interact with his spouse, children, and others, and he is able to drive and shop (Tr. 20); and, Plaintiff testified that pain affects his concentration but also stated that he can generally follow instructions (Tr. 20; 279) and medical records indicate that he had good concentration, could understand and follow simple instructions, and could count serial sevens (Tr. 376, 382).  The ALJ also noted that Plaintiff did not have neck pain after his surgery and that he only takes over the counter medication sporadically, and not prescribed medication, for back pain (Tr. 22).  The ALJ accounted for Plaintiff's pain and its effect on his abilities by limiting him to light, unskilled work, with simple routine instructions and which includes weight restrictions (greater than that recommended by Dr. Gornet) with sit/stand options.

The ALJ's analysis discussed various Polaski factors, although not all, and his conclusions are supported by substantial evidence.  It is not unreasonable for the ALJ to conclude that Plaintiff's pain is not disabling because he elected to take over-the-counter-medication (which he does not take consistently) in lieu of prescription pain medication. Pierce v. Kijakazi, 22 F.4th 769, 772-773 (8th Cir. 2022) (ALJ properly discounted plaintiff's statements of pain due to, in part, conservative treatment. Harris v. Barnhart, 356 F.3d 926, 630 (8th Cir. 2004) (use of over-the-counter medications in lieu of stronger prescription medication can be considered when assessing assertions of pain).  Plaintiff was able to participate and provide good effort in both physical and psychological examinations (Tr. 375-377; 380-386). Schwandt v. Berryhill, 926 F.3d

1004, 1012) (8th Cir. 2019) (ALJ can consider, in part, objective medical evidence that undermines a plaintiff's claim of disabling pain). And, some of Plaintiff's daily activities do undermine his claims of disabling pain. As the ALJ pointed out, Plaintiff drives and shops, activities that require some concentration and memory and demonstrate an ability to follow simple directions (even with the duration limitations Plaintiff states); he lives with middle-school aged children, a wife, and sees his mother regular, demonstrating that he can socialize and interact with others; and, he can care for his own personal hygiene, prepare simple meals, and do minimal household chores, an indication that his pain is not completely disabling. See Swarthout v. Kijakazi, 35 F.4th 608, 612 (8th Cir. 2022) (noting that activities of daily living are one factor an ALJ can consider). In sum, there is substantial evidence supporting the ALJ's findings with respect to Plaintiff's claim of disabling pain.

**B.      RFC Determination**

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). As the Eighth Circuit recently stated, "the RFC determination is a 'medical question,' that must be supported by some medical evidence of [plaintiff's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (citations omitted). "But, the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." Id. (citation and parenthetical omitted). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner, . . . based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." Id. at 744-

45 (citations omitted). "Similarly, the underlying determination as to the severity of impairments is not based exclusively on medical evidence or subjective complaints. Rather, regulations set forth assorted categories of evidence that may help shed light on the intensity, persistence, and limiting effects of symptoms." Id. at 745 (footnote and citations omitted). Similar factors guide the analysis of whether a claimant's subjective complaints are consistent with the medical evidence. Id. (footnote, citation, and parenthetical omitted). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." Turner v. Saul, No. 4:18 CV 1230 ACL, 2019 WL 4260323, at *8 (E.D. Mo. Sept. 9, 2019) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

Plaintiff argues that the ALJ's RFC determination is based on conclusory statements without a statement of how the evidence supports the conclusions; that the ALJ improperly relied on non-treating medical consultants, in particular Dr. James Weiss and Dr. Brandhorst, and improperly drew inferences from medical reports; and that the ALJ failed to explain why he didn't adopt all the findings of the opinions he found persuasive. The Court disagrees.

The ALJ sufficiently explained his determination of Plaintiff's RFC, which is supported by substantial evidence. "[A] claimant's RFC is a medical question, [therefore] an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). Contrary to Plaintiff's suggestion, however, there is no requirement that an RFC finding be supported by a specific medical opinion, Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016), or, indeed, any medical opinion at all. See Stringer v. Berryhill, 700 F. App'x 566, 567 (8th Cir. 2017) (affirming ALJ's RFC determination even though there were no medical opinions). And, Plaintiff has cited to no

case authority or regulation that requires the ALJ to adopt all of the restrictions set forth in an opinion even when finding that opinion persuasive.

As set forth above, the ALJ found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk thirty minutes at one time but cumulatively six hours out of an eight-hour workday; sit thirty minutes at one time for a total of six hours in an eight-hour workday; occasionally climb, stoop, kneel, crouch and crawl; frequently reach and handle; and, is limited to simple routine tasks throughout the workday. To support this RFC, the ALJ outlined, in detail, Plaintiff's medical record, his statement of activities of daily living, and the opinions of various medical professionals. In particular, the ALJ noted that Plaintiff continued to work after the motor vehicle accident and that, after his surgery, his headaches subsided along with cervical pain, and that he has had limited and conservative treatment thereafter. Nonetheless, the ALJ found that his impairments do result in some functional limitation (Tr. 23).

For example, the ALJ found that while Plaintiff testified that he could lift no more than 15 pounds, medical records reveal normal strength after his surgery (Tr. 351, 385-386) and Dr. Gornet released him back to work with a 25-pound weight restriction notwithstanding his lumbar spine pain and some limited range of motion in his cervical spine (Tr. 416). Plaintiff further testified as to limitations with standing and sitting and the need to interchange frequently. The ALJ noted that the consultive examiner found no muscle spasms, a steady normal gait, and intact sensation and strength (Tr. 23). The ALJ further noted that Plaintiff could drive, care for animals and do some housework which allowed for frequent reaching and handling (Tr. 23); the Court further notes that the consultive examiner found no issues with fine or gross manipulative movements (Tr. 384). And, Plaintiff was limited to simple routine tasks because of his limitations in following complex instructions, and his reported memory and concentration issues (Tr. 24). Thus, while the ALJ may not have tied each and every functional limitation to a medical record or evidence, or address each

functional limitation set forth in opinions, the RFC is supported by substantial evidence and explained in sufficient detail. Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir.2005) (citations omitted) (mere deficiency in opinion writing not a sufficient reason to set aside an ALJ's finding).

### C.     Closed Period of Disability

Plaintiff next argues that the ALJ failed to consider whether Plaintiff was disabled for a closed period of time, while he was under the care of Dr. Gornet. Plaintiff did not raise this issue at the administrative level and does not support his argument before this Court with citation to any case authority or regulation. And, as Defendant notes, at no point during this case has Plaintiff alleged that he was more or less disabled at any period of time; his hearing testimony alleges the same functional limitations as his pre-surgery function's report.

The Commissioner may award Social Security disability benefits either on a continuing basis, or, where a once disabling condition later ceases to be disabling, for a "closed period." Harris v. Sec'y of Dept. of Health & Human Servs., 959 F.2d 723, 724 (8th Cir. 1992) ("[D]isability is not an all-or-nothing proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time."); see also, e.g., Quaite v. Barnhart, 312 F. Supp.2d 1195, 1200-01 (E.D. Mo.2004) (affirming the ALJ's decision to award disability benefits for a closed period ending on a specific date where there was substantial evidence to support the ALJ's conclusion that the plaintiff had ceased being disabled as of that date). If evidence presented shows that a Plaintiff was unable to work for at least twelve months, but recovered the ability to work before the decision on his claim is made, he may be eligible for disability benefits for the time he was unable to work. To qualify for a closed period of disability, the disabling condition must last for at least twelve months. 42 U.S.C. § 423(d)(1)(A); Karlix v. Barnhart, 457 F.3d 742, 747 (8th Cir. 2006).

In this case the ALJ did not deny Plaintiff's claim based on insufficient duration of an ability to engage in substantial gainful employment, but because he had the RFC to perform work, as set forth above.  Because the ALJ properly determined Plaintiff not to be disabled at any time during the relevant period, he did not err in failing to consider a closed period of disability.  See Clark v. Bowen, 864 F.2d 66 (8th Cir. 1988) (per curiam).  Therefore, the ALJ was not required to present a rationale for not awarding a closed period of disability when he found Plaintiff has no disabling condition for a significant time period.  See SSR 82-52.

Based on the record before the Court, Plaintiff was not under a disability for at least a 12-month period even though Dr. Gornet issued temporary disability notes from January 2019 through February, 2020.  Other evidence in the record reveals that Plaintiff had an RFC for work during that time period, including Dr. Van Bruggen's consultive examination in September, 2019 and Dr. Gornet's own medical notes outlining marked improvement in Plaintiff's functioning.

**D.  Limitations in concentration, persistence, or pace**

Finally, Plaintiff argues that the limitation of "simple routine tasks throughout the workday" in the RFC and hypothetical to the vocational expert did not take into account Plaintiff's moderate limitations in concentration, persistence, and maintaining pace (Tr. 20, 83).  In doing to, Plaintiff relies on the Seventh Circuit Court of Appeals holding in Young v. Barnhart, 362 F.3d 995 (7th Cir. 2004), in which the Court found that the ALJ erred in failing to account for the claimant's "social and temperamental impairments" in the RFC and hypothetical to the vocational expert.  Id. at 1004.  That Court specifically found that a number of medical providers found that the claimant had poor insight, impulsivity, interpersonal problems, an inability to complete simple, repetitive work, inability to follow instructions and, importantly, "disabilities [that] would prevent him from obtaining and maintaining gainful employment."  Id. 1005.  In light of the overwhelming medical evidence, the Seventh Circuit found that the ALJ's RFC "fell short" and resulted in a

"fundamentally flawed" hypothetical question which did not account for all the limitations supported by the record.  Id. 1004-1005. In this case, however, there is no overwhelming medical evidence that would support more than a moderate limitation in concentration, persistence, and pace: Ms. Schultz noted that he was able to "understand and follow simple and/or familiar instructions" even though he reported problems with concentration, persistence, and pace (Tr. 376); and, Dr. Van Bruggen found him to be alert with a clear thought process and that "concentration was good" (Tr. 382).  While Plaintiff reported significant limitations in these areas, he also can drive, care for his pets, interact with family, and perform some household duties.  The hypothetical question, which includes simple, routine tasks throughout a workday, accounts for the limitations found by the ALJ and supported by the record.

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of August, 2022.